**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

LARRY HOBBS FARM EQUIPMENT, INC.,                                        PLAINTIFF
d/b/a HOBBS FARM IMPLEMENT and
HOBBS FARM EQUIPMENT

v.                                            No. 2:08CV00049 JLH

CNH AMERICA, LLC, d/b/a CASE IH,
successor in interest to DMI, INC.                                       DEFENDANT

<u>**OPINION AND ORDER**</u>

This action arises out of the termination of a dealer agreement between Larry Hobbs Farm

Equipment, Inc., and DMI, Inc., which was succeeded by CNH America, LLC.  This Court has

jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and

the amount in controversy exceeds $75,000.  Hobbs Farm Equipment has brought claims for

violation of the Arkansas Franchise Practices Act and the Arkansas Farm Equipment Retailer

Franchise Protection Act, as well as claims for breach of contract, tortious interference with present

and prospective business advantage, and unjust enrichment.  CNH America has moved to dismiss

the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Hobbs Farm

Equipment has stipulated to the dismissal of its claim for unjust enrichment.  For the following

reasons, the motion to dismiss is granted in part and denied in part.

**I.  THE STANDARD**

In ruling on a Rule 12(b)(6) motion, the court "accept[s] as true all of the factual allegations

contained in the complaint, and review[s] the complaint to determine whether its allegations show

that the pleader is entitled to relief."  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th

Cir. 2008).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving

party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery." *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007) (overruling language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at __, 127 S. Ct. at 1964-65 (citations omitted). Stated differently the plaintiff must "raise a right to relief above a speculative level." *Schaaf*, 517 F.3d at 549.

## II.  THE FACTS

According to the complaint, in early 1995 Hobbs Farm Equipment entered into a dealer agreement with DMI, which authorized Hobbs Farm Equipment to be a nonexclusive dealer of DMI products, specifically its tillage and soil management equipment, in its trade area.[1] Hobbs Farm

---

[1] Hobbs Farm Equipment and DMI had originally entered into an agreement enabling Hobbs Farm Equipment to sell DMI products in June of 1993. The 1993 agreement is not in issue.

Equipment alleges that the 1995 agreement is still enforceable against CNH America as a successor to DMI.

In or about November 1998, Case Corporation, a predecessor of CNH America, acquired DMI.  At that time, Case assured DMI dealers, including Hobbs Farm Equipment, that it would not terminate the DMI dealers' rights to distribute the DMI tillage and soil management equipment it had previously distributed so long as they continued to perform capably.  Hobbs Farm Equipment alleges that it performed capably both before and after Case Corporation's acquisition of DMI.

In late 2004 or 2005, CNH America began to supply Hobbs Farm Equipment's competitor, Heartland Equipment, Inc. of East Arkansas, with the DMI tillage and soil management equipment that Hobbs Farm Equipment had distributed since 1993, except that the equipment supplied to Heartland bore the Case IH brand and was painted red like other Case IH products, whereas DMI-branded products were painted blue.  Stated differently, CNH America engaged in dual branding of identical tillage and soil management equipment originally distributed only in blue paint and only with the DMI brand name, but now also distributed in red paint with the Case IH brand name.

Hobbs Farm Equipment's sales of DMI tillage and soil management equipment dropped dramatically in the years following CNH America's decision to supply its competitor, Heartland, with the DMI equipment that was painted red under the Case IH brand name.  This practice substantially changed the competitive circumstances of Hobbs Farm Equipment's dealership. Beginning in 1998 and continuing as late as mid-2007, a representative of CNH America assured Hobbs Farm Equipment that performing "blue" dealers would not be terminated by CNH America.

On August 14, 2007, Hobbs Farm Equipment received a letter from CNH America that included the following:

CNH America LLC ("The Company") wishes to provide you with advance notice of its decision to withdraw from the DMI-branded tillage business effective in 2008. As a result, Hobbs Farm Equipment Co. Inc.'s last ordering period for wholegoods will run through August 31, 2007.  After that date, the Company will no longer accept orders for any DMI-branded tillage wholegoods products.  However, Hobbs Farm Equipment Co. Inc. will be able to continue to purchase DMI-branded replacement parts through August 31, 2008.

The Company will continue to provide you with retail programs throughout 2007 and the first half of 2008 to assist you in retailing [sic] these products prior to August 31, 2008.  If any DMI-branded wholegoods remain at your dealership by that date, the Company will repurchase those products in accordance with the terms of your dealer agreement and company policy, or state law.  The Company will also repurchase your remaining DMI replacement parts according to state law or company policy.

On April 7, 2008, Hobbs Farm Equipment filed the present action.

### III.  BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Hobbs Farm Equipment's complaint alleges termination without good cause, without proper notice, and in a manner that breached the implied duty of good faith and fair dealing.

### A.  BREACH OF CONTRACT

The first two allegations are covered by paragraph VII of the DMI Dealer Agreement, which states in pertinent part: "Either party may terminate this Agreement without cause and for any reason, upon not less than 30 days written notice given to the other party . . . ."  Thus, termination without good cause is not a breach of the contract because the DMI Dealer Agreement allowed for termination without good cause.

With respect to the alleged improper notice, CNH America contends that the DMI Dealer Agreement will not be terminated until August 31, 2008, because Hobbs Farm Equipment can purchase DMI-branded replacement parts until that date.  CNH America also argues that it cannot have terminated the DMI Dealer Agreement by August 31, 2007, because it filled a Hobbs Farm

4

Equipment order as late as March of 2008. The complaint alleges, however, that the order filled in 2008 was placed before August 31, 2007. Hobbs Farm Equipment could place no orders for wholegoods after August 31, 2007. At this stage of the litigation, all reasonable inferences must be drawn in favor of Hobbs Farm Equipment, and so for the purposes of this motion, the Court accepts as true Hobbs Farm Equipment's factual allegation that the DMI Dealer Agreement was terminated as of August 31, 2007.

As noted by CNH America, however, even if it breached the thirty-day notice requirement of the DMI Dealer Agreement, it is undisputed that CNH America gave Hobbs Farm Equipment written notice of the termination at least seventeen days in advance. Had CNH America fully performed under the contract, it would have given Hobbs Farm Equipment notice that it was terminating the DMI Dealer Agreement as of September 13, 2007. Therefore, Hobbs Farm Equipment would only be entitled to recover the damages that it suffered during the thirteen-day period beginning September 1, 2007. *See* 25 C.J.S. *Damages* § 149 ("Where a contract provides for its termination by either party on notice of a specified number of days, profits may be recovered for only that length of time."); *see also Sofa Gallery, Inc. v. Stratford Co.*, 872 F.2d 259, 263 (8th Cir. 1989) (stating that the plaintiff "is not entitled to recover its lost future profits even if [the defendant] did breach its duty to give reasonable notice"); *Chrysler Corp. v. Quimby*, 144 A.2d 885, 886-87 (Del. 1958) (concluding that a franchise provision that allowed for termination by either party upon ninety days written notice was enforceable, yet the plaintiff could only recover loss of profits for the ninety-day period); *Osborn v. Commanche Cattle Indus., Inc.*, 545 P.2d 827, 831 (Okla. Civ. App. 1975) ("[T]he only legally protectible expectation interest in the party to a contract terminable by either party upon notice is the prospect of profit over the length of the notice period."). Permitting

recovery for profits lost after September 13, 2007, would put Hobbs Farm Equipment in a better position than that in which it would have been had the contract been performed. *Walker v. Ridgeview Constr. Co.*, 736 N.E.2d 1184, 1187 (Ill. App. Ct. 2000) ("The purpose of damages is to put the nonbreaching party into the position he or she would have been in had the contract been performed, but not in a better position.");[2] *see also Deck House, Inc. v. Link*, 98 Ark. App. 17, 25, 249 S.W.3d 817, 824-25 (2007) ("In general, damages recoverable for breach of contract are those damages that would place the injured party in the same position as if the contract had not been breached."). Thus, for breach of the notice provision Hobbs Farm Equipment would be entitled only to damages that it suffered from September 1, 2007, through September 13, 2007. Hobbs Farm Equipment alleges no lost sales or other damages suffered during this period, so the claim for breach of the notice provision will be dismissed without prejudice.

## B.    BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

With regard to the claim for breach of the implied duty of good faith and fair dealing, Hobbs Farm Equipment has alleged the following: CNH America has been neither reasonable nor honest in its suggestion that the equipment in question has been "withdrawn" from the marketplace; CNH America failed to support the DMI dealer network and favored the Case IH network despite Hobbs Farm Equipment's reasonable expectation that CNH America would continue to support Hobbs Farm Equipment; CNH America misappropriated the goodwill and efforts of Hobbs Farm Equipment to develop a market and substantial customer demand in their trade areas for this equipment by handing over the ability to sell and service the equipment to Hobbs Farm Equipment's competitor; and CNH America failed to provide fair compensation for Hobbs Farm Equipment's

---

[2] The DMI Dealer Agreement is governed by Illinois law.

dealership upon termination.

The agreement states that it is governed by the laws of the State of Illinois, which is the state in which DMI had its principal place of business.  Under Illinois law, "the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract.  Rather, this obligation is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions."  *Fox v. Heimann*, 872 N.E.2d 126, 134 (Ill. App. Ct. 2007).  Hobbs Farm Equipment's allegations are essentially complaints that CNH America engaged in dual distribution of the tillage and soil management equipment, terminated the distributorship without adequate notice, and terminated its rights to distribute the equipment without good cause.  The clear language of the agreement governs these issues.  The DMI Dealer Agreement stated that it could be terminated "without cause and for any reason."  Furthermore, because the contract provided that Hobbs Farm Equipment would be a "non-exclusive dealer" of DMI products, the contract explicitly permitted dual distribution.  As noted above, the agreement provided for thirty days notice of termination.  Thus, there are no provisions that are susceptible of two conflicting constructions where the implied covenant of good faith and fair dealing might be of use as a construction aid in resolving an ambiguity.  Hobbs Farm Equipment's claim for breach of contract and the implied covenant of good faith and fair dealing is therefore dismissed without prejudice.

## IV.  TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

In its claim for tortious interference with present and prospective business advantage, Hobbs Farm Equipment has alleged that it had existing contracts and prospective economic opportunities of which CNH America was aware.  Hobbs Farm Equipment asserts these opportunities included, but were not limited to, existing and prospective customer relationships for the sale of DMI-branded

tillage and soil management equipment.  The complaint then alleges that CNH America engaged in wrongful conduct directed toward Hobbs Farm Equipment via dual branding and termination of Hobbs Farm Equipment without good cause.

Under Arkansas law, the elements for a claim of tortious interference with a contractual relationship or business expectancy are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.  [The Supreme Court of Arkansas] also require[s] that the defendant's conduct be at least 'improper.'

*Vowell v. Fairfield Bay Cmty. Club, Inc.*, 346 Ark. 270, 276-77, 58 S.W.3d 324, 329 (2001) (citing *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444, 47 S.W.3d 866, 875 (2001)) (citations omitted).  The elements for this claim under Illinois law are essentially the same.  *See Maag v. Ill. Coalition for Jobs, Growth, and Prosperity*, 368 Ill. App. 844, 854, 858 N.E.2d 967, 976 (2006) (citing *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996)).

In Arkansas, "An action for tortious interference with a contractual relationship is based upon a defendant's conduct toward a third party."  *Palmer v. Arkansas Council on Econ. Educ.*, 344 Ark. 461, 473, 40 S.W.3d 784, 791 (2001).  "The fundamental premise of the tort [is] that a person has a right to pursue his valid contractual and business expectancies unmolested by the wrongful and officious intermeddling of a third party . . . ."  *Mason v. Funderbunk*, 247 Ark. 521, 527, 446 S.W.2d 543, 547 (1969).  Illinois law has also long held that the defendant's conduct must be directed toward an identifiable third party to sustain a claim for tortious interference with business expectancy.  *See Douglas Theater Corp. v. Chicago Title & Trust Co.*, 266 Ill. App. 3d 1037, 1047, 641 N.E.2d 584,

590 (1994) (citing *Eisenbach v. Esformes*, 221 Ill. App. 3d 440, 444, 582 N.E.2d 196, 199 (1991);

*Willcutts v. Galesburg Clinic Ass'n*, 201 Ill. App. 3d 847, 851, 560 N.E.2d 1, 4 (1990)).  Therefore,

the Court's analysis is the same whether applying Arkansas or Illinois law to the common law claim

of tortious interference with business expectancy.

Here, Hobbs Farm Equipment has not identified a third party with which CNH America

interfered, nor has Hobbs Farm Equipment described how CNH America meddled with the

relationship between Hobbs Farm Equipment and its customers.  In fact, the complaint fails to allege

that CNH America took any action directed at any third party.  The complaint alleges that CNH

America terminated its relationship with Hobbs Farm Equipment but not that it directed any conduct

toward Hobbs Farm Equipment's customers.  Thus, Hobbs Farm Equipment's complaint fails to

state a claim for tortious interference with a present and prospective business advantage.

## V.  ARKANSAS FARM EQUIPMENT RETAILER
## FRANCHISE PROTECTION ACT

Hobbs Farm Equipment has also alleged that CNH America has violated the Arkansas Farm

Equipment Retailer Franchise Protection Act.  The first issue on this claim is the statutory

construction of Ark. Code Ann. § 4-72-310(b)(4), which states as follows:

(b) It is a violation of this subchapter for a manufacturer to:

* * *

(4) Attempt or threaten to terminate, cancel, fail to renew, or substantially change
the competitive circumstances of the dealership agreement based on the result of
a natural disaster, including a sustained drought in the dealership market area,
labor dispute, or other circumstances beyond the dealer's control.

CNH America argues "that Section 310(b)(4) applies only in situations involving events like a

'natural disaster,' and that business decisions by the manufacturer are ***not*** 'other circumstances

beyond the dealer's control' within the meaning of the statute," citing for support *Southern Implement Co. v. Deere & Co.*, 122 F.3d 503, 508 (8th Cir. 1997).  CNH America accurately cites the Eighth Circuit's opinion in *Southern Implement*, which says that section 310(b)(4) "requires a 'natural disaster' to trigger the law's prohibition."  *Id.* (footnote omitted).  There, the court added, "While we acknowledge that the law includes 'labor disputes' as natural disasters and that 'other circumstances beyond the dealer's control' is rather broad, we do not believe that [the dealer's] relationship with [the distributor] qualifies as a natural disaster for the purposes of the law."  *Id.* Regardless of whether this Court agrees with the Eighth Circuit's analysis in *Southern Implement*, the Court is bound by the Eighth Circuit's decision.  The Supreme Court of Arkansas, however, may well disagree with that construction of this Arkansas statute, and its construction of the statute will be binding authority.  The Court will certify this question of statutory construction to the Supreme Court of Arkansas.

The other issue on Hobbs Farm Equipment's claim under the Arkansas Farm Equipment Retailer Franchise Protection Act is also one of statutory construction.  The only remedy provided in the Arkansas Farm Equipment Retailer Franchise Protection Act is the recovery of damages, costs, and attorney's fees for failure to repurchase inventory.  *See* ARK. CODE ANN. § 4-72-309.  CNH America offered to repurchase Hobbs Farm Equipment's unsold DMI-branded inventory in the termination letter dated August 14, 2007, so no damages are reasonable under section 4-72-309. Hobbs Farm Equipment seeks other remedies, however, arguing that section 309 does not serve as the exclusive remedy and that a mere repurchase of inventory is an insufficient remedy for the alleged violations of section 310.  Whether damages for failure to repurchase inventory is the sole remedy available under the Arkansas Farm Equipment Retailer Franchise Protection Act, or whether

10

other remedies are also available, is an issue of statutory construction.  Again, the highest authority on the construction of this statute is the Supreme Court of Arkansas.  Because there is no Arkansas precedent directly on point, the Court will also certify this question to the Supreme Court of Arkansas.

Thus, Hobbs Farm Equipment's claim for violation of the Arkansas Farm Equipment Retailer Franchise Protection Act depends on two issues of statutory construction: first, whether terminations resulting from circumstances other than a natural disaster can trigger liability under section 310(b)(4); and second, whether the sole remedy under the Act is the damages, costs, and attorney's fees that result from failure to repurchase inventory.  The Court will certify these two questions to the Supreme Court of Arkansas pursuant to Rule 6-8 of the Rules of the Supreme Court of the State of Arkansas.

## VI.  ARKANSAS FRANCHISE PRACTICES ACT

Hobbs Farm Equipment also alleges that it qualifies for protection under the Arkansas Franchise Practices Act, and that CNH America has violated three provisions of this Act.  First, Hobbs Farm Equipment alleges that CNH America has refused to deal with it in a commercially reasonably manner or in good faith in violation of section 206(6).  Second, Hobbs Farm Equipment alleges that representations made by CNH America and its predecessors operated as a fraud on Hobbs Farm Equipment in violation of section 207(a)(3).  Third, Hobbs Farm Equipment alleges that CNH America violated Ark. Code Ann. § 204, both by terminating its franchise to sell DMI tillage and soil management equipment without good cause and by failing to provide Hobbs Farm Equipment with ninety days written notice prior to termination.

CNH America denies these allegations.  It further contends that Hobbs Farm Equipment did

not have a franchise as defined by the Act because their agreement did not contemplate a territory, thus creating no liability for CNH America.  Section 4-72-202(1)(A) defines a franchise as

> a written or oral agreement for a definite or indefinite period in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic within an exclusive or nonexclusive territory or to sell or distribute goods or services within an exclusive or nonexclusive territory at wholesale or retail, by lease agreement, or otherwise.

CNH America contends that the DMI Dealer Agreement established no territory, exclusive or nonexclusive, within which Hobbs Farm Equipment was to operate.  Hobbs Farm Equipment responds that paragraph VI(C) of the DMI Dealer Agreement states, "Dealer shall . . . [a]chieve a market share, satisfactory to Company, for Products in the area served by Dealer."  This section of the agreement obviously contemplated that Hobbs Farm Equipment would serve an area and would achieve a satisfactory market share within that area, meaning that the agreement contemplated a territory.  The agreement did not define the boundaries of the territory, but the Franchise Practices Act does not require that the dealership agreement specify the boundaries of the territory.  By attaching the agreement to the complaint and incorporating it by reference, Hobbs Farm Equipment has alleged that there was a territory.  Therefore, Hobbs Farm Equipment had a franchise as defined by section 202(1)(A).

## A.   SECTION 206(6) AND DEALING WITH A FRANCHISE IN A COMMERCIALLY UNREASONABLE MANNER OR IN BAD FAITH

Section 206(6) prohibits "any franchisor [from] . . . refus[ing] to deal with a franchise in a commercially reasonable manner and in good faith . . . ."  Hobbs Farm Equipment's complaint specifically alleges that CNH America engaged in a commercially unreasonable practice "by virtue of its sales of DMI-branded equipment through a dual distribution system."  As CNH America noted,

the Arkansas Franchise Practices Act recognizes the reasonableness of dual distribution by a franchisor to multiple franchisees in the same area by defining a franchise as the use of a trademark or sale of a particular product "within an exclusive *or nonexclusive*" territory.  The DMI Dealer Agreement provided that Hobbs Farm Equipment would be a nonexclusive dealer of the DMI products.  Therefore, even if CNH America engaged in dual distribution as  Hobbs Farm Equipment has alleged, this dual distribution was not commercially unreasonable.  Hobbs Farm Equipment has thus failed to state a claim on which it could recover under Ark. Code Ann. § 4-7-206(6), and that claim is dismissed.

**B.      SECTION 207(A)(3) AND FRAUD**

Hobbs Farm Equipment's complaint alleges that "the representations by [CNH America] and its predecessors that Hobbs [Farm Equipment] would not be terminated were relied upon by Hobbs [Farm Equipment] to its detriment and operated as a fraud upon Hobbs [Farm Equipment] . . . ."  Section 207(a)(3) makes it unlawful for "any person, directly or indirectly, in connection with the offer, sale, purchase, transfer, or assignment of any franchise in this state to knowingly . . . [e]ngage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."   In Arkansas, the general rule "is that 'an action for fraud or deceit may not be predicated on representations relating solely to future events.'" *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1186 (8th Cir. 1996) (quoting *Delta Sch. of Commerce, Inc. v. Wood*, 298 Ark. 195, 200, 766 S.W.2d 424, 427 (1989)).  Hobbs Farm Equipment's allegations are insufficient as a matter of law to sustain a claim of fraud under section 207(a)(3).  According to Hobbs Farm Equipment, CNH America first made representations in 1998 that Hobbs Farm Equipment would not be terminated as a franchise.  CNH America continued to sell DMI products to Hobbs Farm Equipment

for an additional nine years after that representation.  Hobbs Farm Equipment also alleges that a similar representation was made in mid-2007.  Because this latter representation from CNH America's representative related solely to its future relationship with Hobbs Farm Equipment, and because Hobbs Farm Equipment has not alleged that the person who made the future representation knew that the representation was false or that he intended to deceive, the complaint fails to state a claim for fraud under Arkansas law.  Therefore, Hobbs Farm Equipment's claim arising under Ark. Code Ann. § 207(a)(3) is dismissed.

## C.    SECTION 204: DEFICIENT NOTICE AND TERMINATION WITHOUT GOOD CAUSE

The remaining claims under the Arkansas Franchise Practices Act are based on Ark. Code Ann. § 204.   CNH America alleges two violations of section 204: first, CNH America gave insufficient notice; and second, CNH America terminated Hobbs Farm Equipment's franchise without good cause.

### 1.    Deficient Notice

Subsection (b) of section 204 provides:

(b) No franchisor shall directly or indirectly terminate, cancel, or fail to renew a franchise without first giving written notice to the franchisee at least ninety (90) days in advance of such action, setting forth the reasons for the termination, cancellation, or intention not to renew, and, in the case of terminations, shall provide the franchisee with thirty (30) days in which to rectify any claimed deficiency.

With respect to this provision, CNH America contends that Hobbs Farm Equipment was not foreclosed from using the DMI trademark until August 31, 2008, or one year and seventeen days after notice was given.  The complaint alleges, however, and the termination letter confirms, that Hobbs Farm Equipment could not order new DMI wholegoods products after August 31, 2007, which was only seventeen days after the date on which CNH America gave notice of termination.

14

As stated above in ruling on whether notice was sufficient under the contract, it is reasonable to infer notice was deficient.  It is also reasonable to infer that CNH America failed to set forth the reasons for termination and to provide Hobbs Farm Equipment the requisite thirty days to rectify any claimed deficiency.  Nevertheless, Hobbs Farm Equipment has not alleged that the deficient notice itself was the proximate cause of any specific damages.  For this reason, Hobbs Farm Equipment's claim arising under Ark. Code Ann. § 204(b) is dismissed without prejudice.

### 2.      Termination Without Good Cause

Finally, Hobbs Farm Equipment's complaint alleges a violation of section 204, subsection (a), which provides:

> (a) It shall be a violation of this subchapter for a franchisor to:

> > (1) Terminate or cancel a franchise without good cause . . . .

CNH America moves the Court to dismiss this claim for three separate reasons.  CNH America first argues that Hobbs Farm Equipment's allegations are legally insufficient to establish a "termination" under section 204(a)(1).  Next, it argues that Hobbs Farm Equipment fails to allege that any damages it suffered were proximately caused by CNH America's termination of the DMI Dealer Agreement. Finally, CNH America argues that its market withdrawal of DMI-branded tillage and soil management equipment constitutes "good cause" for termination.

### a.      "Termination" under section 204(a)(1)

Regarding CNH America's argument that the complaint's allegations are legally insufficient to establish a termination under section 204(a)(1), CNH America provides two reasons.  First, CNH America contends that its decision to withdraw from the DMI-branded tillage and soil management equipment business effective 2008 is not the type of termination of a franchise that the Arkansas

Franchise Practices Act was enacted to prohibit.  This issue is essentially the same as whether a market withdrawal of a product constitutes good cause, and so the Court will be address it below.

Second, CNH America asserts that imposing a fee on distributors before they can exit the market of a particular state raises commerce clause concerns.  In support, CNH America cites *Central GMC, Inc. v. General Motors Corp.*, 946 F.2d 327 (4th Cir. 1991), which stated *in dicta* that requiring a manufacturer to pay a penalty before it could exit the individual state market would raise commerce clause concerns.  *Id.* at 334.  As Hobbs Farm Equipment notes, however, the Fourth Circuit later distinguished that case, stating it had merely expressed that "commerce clause concerns would arise from a ruling that the discontinuation of a single product line that is part of an overall franchise constitutes the improper termination of a separate franchise."  *Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.*, 510 F.3d 474, 484 (4th Cir. 2007).  Conversely, where the manufacturer terminates its entire agreement with the dealer, and where "the enumerated occurrences in the Arkansas Act are the exclusive means by which a franchisor can terminate a franchise for 'good cause,'" the interpretation that "market withdrawal" of a product can subject a distributor to liability under the Arkansas Franchise Practices Act "does not contravene the dormant commerce clause."  *Id.*  By its own admission, CNH America does not wish to exit Arkansas's market.  It will continue to sell the same products and will do so in Arkansas, albeit under a different trade name and trademark.  Therefore, regardless of whether it is liable to Hobbs Farm Equipment for improperly terminating a franchise, Arkansas is not requiring CNH America to pay an "exit toll" before it can leave the state market.  For these reasons, the commerce clause is not implicated.

      **b.**      ***Proximate causation***

CNH America's second argument to dismiss the claim under section 204(a)(1) is that the

complaint alleges no damages proximately caused by CNH America.  CNH America argues that it must have been the termination of the franchise, rather than the market withdrawal, that proximately caused the damages in order for Hobbs Farm Equipment to be able to recover.  It further argues that the termination of the agreement cannot have proximately caused Hobbs Farm Equipment any damage because, regardless of whether or not CNH America terminated the agreement, there would have been no DMI-branded equipment for Hobbs Farm Equipment to sell due to CNH America's market withdrawal of the DMI-branded equipment.  Thus, there would have been no profits for Hobbs Farm Equipment to accrue, and Hobbs Farm Equipment therefore cannot have lost any profits from the termination.

These arguments are unpersuasive.  CNH America has allegedly proximately caused damages to Hobbs Farm Equipment by way of lost profits in three different ways.  First, as alleged by Hobbs Farm Equipment, CNH America's termination of Hobbs Farm Equipment's right to buy DMI-branded products preceded its actual withdrawal of those products from the market.  According to Hobbs Farm Equipment, it was precluded from ordering new DMI-branded wholegoods after August 31, 2007, yet the termination letter stated that the market withdrawal of the products would be "effective in 2008."  CNH America may be liable for Hobbs Farm Equipment's lost profits resulting from its inability to sell DMI-branded products from the period starting on September 1, 2007, and ending at the date by which the market withdrawal of those products was ultimately effected.

Second, Hobbs Farm Equipment alleges that it can recover damages because there has been no market withdrawal of the products that it was entitled to sell.  More specifically, Hobbs Farm Equipment alleges that the DMI Dealer Agreement conferred the right to sell DMI's products, without conditioning that right on how the products were branded.  Those products bearing a

17

different paint color and a different brand name are currently being sold to other dealers in Arkansas. Hobbs Farm Equipment thus argues that it has an ongoing right under the DMI Dealer Agreement to sell those products.  Because CNH America has terminated its ability to sell those products, it has and will continue to lose profits, and the termination of its ability to sell the products is the proximate cause of those damages.  CNH America counters that a franchise is defined under section 202(1)(A) as the authorization to use a particular trademark.  Therefore, CNH concludes, regardless of whether the products now being sold under the Case IH name are otherwise identical to the products Hobbs Farm Equipment was authorized to sell, the fact that they are being sold under a different trademark means that Hobbs Farm Equipment has no right to sell them, nor has it ever had such a right.

Contrary to CNH America's argument, the definition of franchise is not limited to the use of a trademark.  Section 202(1)(A) also defines franchise as a written agreement "to sell or distribute goods or services within an exclusive or nonexclusive territory at wholesale or retail . . . ."  Here, the DMI Dealer Agreement provides that Hobbs Farm Equipment had acquired a franchise to sell or distribute products within a nonexclusive territory at retail.  The agreement did not say that Hobbs Farm Equipment would have the right to sell the products only so long as they bore the DMI trademark and trade name.  According to the complaint, the products that Hobbs Farm Equipment was authorized to sell are still being sold within the same territory in which the agreement entitled Hobbs Farm Equipment to sell those goods.  It is therefore reasonable to infer that the termination of Hobbs Farm Equipment's ability to market and sell those products has proximately caused it to lose profits.

Third, CNH America argues that it would only be liable for damages proximately caused by

the actual termination of the franchise, rather than for damages proximately caused by its decision to withdraw the DMI-branded products from the market. This argument assumes that termination of the franchise and market withdrawal are separate and distinct actions. Under the Arkansas Franchise Practices Act, the decision to withdraw DMI-branded products from the market could constitute a termination or cancellation of the franchise. *See* ARK. CODE ANN. § 4-72-204 ("It shall be a violation of this subchapter for a franchisor to . . . [t]erminate or cancel a franchise without good cause[.]"); AMI Civil § 2800 (2008 ed.) (stating the final element that a jury must find in favor of in order to entitle a plaintiff to recovery is "that the [termination][,] [cancellation][,] [or] [failure to renew] was a proximate cause of plaintiff's damages"). Under Arkansas law, proximate cause is a "cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." AMI Civil § 501 (2008 ed.); *see also Sluder v. Steak & Ale of Little Rock, Inc.*, 361 Ark. 267, 275, 206 S.W.3d 213, 218 (2005).

As alleged by Hobbs Farm Equipment, it had a franchise to sell the products then known as DMI tillage and soil management equipment, and the practice of selling these products was profitable. Its inability to sell those products in the future would cause it to lose profits. Thus, it is reasonable to infer at this stage that CNH America's decision to discontinue the production of the DMI-branded tillage and soil management equipment was a cause that in a natural and continuous sequence produced damage for Hobbs Farm Equipment and without which the damage would not have occurred. Imposition of liability on CNH America would not, as CNH America argues, also impose on it an obligation to manufacture and sell DMI-branded tillage and soil management equipment in perpetuity for the benefit of one dealer in Arkansas. Rather, imposition of liability would require CNH America to compensate Hobbs Farm Equipment for its decision to terminate or

cancel an Arkansas franchise for a reason that the Arkansas Franchise Practices Act does not permit. Thus, Hobbs Farm Equipment has sufficiently alleged that CNH America proximately caused it damages, and CNH America's motion to dismiss on this point is therefore denied.

      c.      ***"Good cause" under section 204(a)(1)***

The final issue is whether CNH America's alleged market withdrawal constitutes good cause under Ark. Code Ann. § 204(a)(1). CNH America contends that market withdrawal constitutes good cause to terminate a franchise and cites several cases in which courts have interpreted other states' Franchise Practices Acts to say that market withdrawal is good cause for termination of a franchise. Hobbs Farm Equipment responds that this market withdrawal is a sham because CNH America will be selling the exact products that Hobbs Farm Equipment had a franchise to sell, only painted red instead of blue and branded with the Case IH brand name instead of the DMI brand name. Additionally, Hobbs Farm Equipment now cites the principle of statutory construction known as *expressio unius est exclusio alterius*, as the Arkansas General Assembly defined "good cause" within the meaning of the Arkansas Franchise Practices Act. Specifically, Ark. Code Ann. § 202(7) sets out eight circumstances that constitute good cause for termination, and market withdrawal of a product, whether a sham or not, is not one of them. Thus, the express inclusion of these eight circumstances can properly be construed to mean the exclusion of market withdrawal, according to Hobbs Farm Equipment. Lastly, Hobbs Farm Equipment cites a Fourth Circuit opinion holding that market withdrawal does not constitute good cause under the Arkansas Franchise Practices Act. *See Clark Machinery*, 510 F.3d at 481-83.

Ultimately, as both parties recognize, the issue here is whether or not a market withdrawal constitutes good cause to terminate a franchise under the Arkansas Franchise Practices Act, and none

of the courts cited by either of the parties is the ultimate authority on how to construe an Arkansas statute. Rather, the Supreme Court of Arkansas is. This issue, along with the two questions of how to construe the Arkansas Farm Equipment Retailer Franchise Protection Act, constitute three questions that are dispositive of liability in this case and on which there is no controlling Arkansas precedent. For these reasons, the Court will certify each of these three questions to the Supreme Court of Arkansas pursuant to Rule 6-8 of the Rules of the Supreme Court of the State of Arkansas.

## CONCLUSION

Hobbs Farm Equipment's claim for unjust enrichment is dismissed by stipulation. Hobbs Farm Equipment's claims for breach of contract, tortious interference with a prospective business advantage, and violations of Ark. Code Ann. §§ 204(b), 206(6), and 207(a)(3) are dismissed without prejudice. The Court will certify the remaining legal questions to the Supreme Court of Arkansas in an accompanying order.

IT IS SO ORDERED this 22nd day of August, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE